Date signed April 14, 2011



_James F. Schneider_
**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| BARBARA A. FROCK, | * | Case No. 08-16251-JS |
| Debtor | * | Chapter 7 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| In re: | * | |
| NANCY GENE SMITH, | * | Case No. 08-16252-JS |
| Debtor | * | Chapter 7 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| JANE McINTIRE UTZ and JAMES F. McINTIRE, | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | Adv. Proc. No. 08-0564-JS |
| BARBARA A. FROCK, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| JANE McINTIRE UTZ and | \* |
| JAMES F. McINTIRE, | |
| | \* |
| | |
| Plaintiffs | \* |
| | |
| v. | \* |
| | |
| NANCY GENE SMITH, | \* |
| | |
| Defendant | \* |

Adv. Proc. No. 08-0565-JS

\* \* \* \* \* \* \* \* \* \* \* \* \*

### *MEMORANDUM OPINION DETERMINING DEBT TO BE NONDISCHARGEABLE*

The instant complaint to determine a debt to be nondischargeable came on for trial.  For the following reasons, the complaint will be granted and the debt to the plaintiffs will be determined to be nondischargeable.

### *FINDINGS OF FACT*

1.  On July 31, 1986, James Franklin McIntire, Sr. ("James") and Adelaide Virginia McIntire ("Adelaide"), husband and wife domiciled in Carroll County, Maryland, agreed by written contract to execute mutual wills.  Agreement between James Franklin McIntire and Adelaide V. McIntire, dated July 31, 1986, Plaintiffs' Exhibit No. 1 (the "Agreement").

2

2.   James had two children from a previous marriage, namely Jane Utz and James F. McIntire, Jr., who are the plaintiffs.

3.   Adelaide had four children from a previous marriage, namely Barbara A. Frock and Nancy Gene Smith, who are the defendants, and also Betty Scharf (since deceased) and Debbie Osborne, who is not named as a party in the instant complaint.

4.   Pursuant to the Agreement, James and Adelaide each executed mutual wills that provided that when one testator predeceased the other, the survivor would inherit certain marital property, and that upon the death of the surviving testator, his or her will would devise the marital property in equal shares among all of the surviving children.  Last Will and testament of James Franklin McIntire, dated July 31, 1986, Plaintiffs' Exhibit No. 2; Last Will and testament of Adelaide V. McIntire, dated July 31, 1986, Plaintiffs' Exhibit No. 3.

5.   In addition, pursuant to the Agreement, James and Adelaide agreed not to alter the terms of each mutual will without the written consent of the other.

6.   In July 1995, James and Adelaide moved to Florida.

7.   On July 4, 2002, James died.  Pursuant to his last will and testament, all of his property was distributed to Adelaide as his surviving spouse.

8.   On July 9, 2003, while in Maryland, Adelaide executed a new will that distributed all of her property to her biological children, namely Barbara A. Frock and

Nancy Gene Smith, Betty Scharf and Debbie Osborne, to the exclusion of the plaintiffs.  Last Will and testament of Adelaide V. McIntire, dated July 9, 2003, Plaintiffs' Exhibit No. 4.

9.  On April 10, 2005, Adelaide died in Maryland.  On the date of her death, she was a resident of Florida.

10.  On April 14, 2005, Charles O. Fisher, Esquire, the attorney who prepared the mutual wills for James and Adelaide, by which he was designated personal representative of each testator's estate, wrote the following letter to Barbara A. Frock, in which he advised her of the existence of the Agreement and its legal effect:

Dear Mrs. Frock:

Please accept my sympathy on the recent death of your mother.

I prepared Wills for both your mother and your stepfather dated July 31, 1986, and an Agreement between them that their Wills would not be changed without the written consent of the other, as the Will represented an agreed disposition of their property to both children and stepchildren.  I was named as personal representative in both Wills.

It is my understanding that your stepfather predeceased your mother, and they are both citizens of Florida.  If I am correct, your mother's Will will have to be probated in Florida which was her domicile at the time of her death.  I will be happy to sign a renunciation in favor of whomever qualifies in that state.

I am enclosing copies of both Wills and the Agreement.  Unless there was a subsequent agreement between your mother and stepfather, I would assume that the July 31, 1986 Will is now operative.  I shall

4

retain the original of the Agreement between your mother and stepfather until contacted by a Florida attorney. . .

Letter of Attorney Charles O. Fisher to Barbara A. Frock, dated April 14, 2005,

Exhibit No. 1 to Plaintiffs' Memorandum [P. 17].

    11.  On April 19, 2005, Mr. Fisher sent the following letter to Barbara A.  Frock

and Jane Utz:

Dear Mrs. Frock and Mrs. Utz,

    I am writing to you as representative of the legatees of the Last Will and testament of Adelaide V. McIntire which was prepared by me and dated July 31, 1986.  These are reciprocal Wills of Mr. and Mrs. McIntire to assure that the children of both of them participate in the estate of each other.  I am enclosing a copy of both Wills and an Agreement signed by both of them that neither could change the Will without the written consent of the other.

    Although Mrs. McIntire executed a new Will on July 9, 2003, a copy of which was furnished me by Mrs. Frock, this was contrary to the aforementioned Agreement and, in my opinion, a nullity.  Consequently, unless there was another agreement between the parties canceling the Agreement of July 31, 1986, I have no alternative but to file the 1986 Will and Agreement in the Orphans' Court for Carroll County, Maryland for probate.

    You will note I am named Personal Representative in the Will; however, since the cooperation of both parties will be required to administer the estate, I would be willing to renounce my right to administer in favor of a representative of each family as joint personal representatives.  I would appreciate your calling me if you desire me to do this. . .

Letter of Attorney Charles O. Fisher to Barbara A. Frock and Jane Utz, dated April 19, 2005, Exhibit 3 to Plaintiffs' Memorandum [P. 17].

12.  On May 12, 2005, Barbara A. Frock, Nancy Gene Smith, Betty Scharf and Debbie Osborne filed a petition in the Circuit Court for Okaloosa County, Florida, Case No. 05-CP-574, for the summary probate of the 2003 will of Adelaide.  Petition for Summary Administration In re estate of Adelaide V. McIntire, Deceased, Plaintiffs' Exhibit No. 5.[1]

13.  The petition did not disclose the existence of a competing will or any dispute regarding the validity of the 2003 will, nor did the petition disclose the existence of the plaintiffs as possible legatees, beneficiaries or creditors of Adelaide's estate.  The petition was executed under oath and represented that there were no known undisclosed beneficiaries or unrevoked wills.  The Florida court issued an order of summary disposition, pursuant to which the defendants and their two sisters each took 1/4 shares of their mother's estate.  Order of Summary Administration, dated May 20, 2005, Plaintiffs' Exhibit No. 6.

14.  The plaintiffs filed suit in the same Florida court against their stepsisters for the misappropriation of the estate and for failing to include the plaintiffs in the

---

[1]The petitioners acted pursuant to the Florida summary administration statute, as opposed to the standard estate administrative format that contemplated the appointment of a personal representative.

distribution.  The suit alleged that the 2003 will was a nullity and that the plaintiffs were entitled to inherit under the 1986 will.

15.  On June 14, 2007, the Florida state court held that the 1986 Agreement and the reciprocal wills created an enforceable contract and entered a judgment in favor of the plaintiffs against each of the four defendants jointly and severally in the amount of $85,663.28, plus $12,824.96, representing statutory post-judgment interest, for a total judgment in the amount of $98,488.24.[2]  Final Judgment of the Circuit Court of the First Judicial Circuit, Okaloosa County, Florida, in the case of *Jane McIntire Utz and James F. McIntire, Jr. v. Betty Jane Scharf, Etal*, Case No. 06-CA-000611, dated June 14, 2007, Plaintiffs' Exhibit No. 7.

16.  On May 5, 2008, Barbara A. Frock and Nancy Gene Smith each filed voluntary Chapter 7 bankruptcy petitions in this Court.

17.  On July 16, 2008, the plaintiffs filed the instant complaints against the debtor/defendants seeking to have the Florida judgment declared to be

---

[2]The opinion held that each plaintiff was entitled to a 20% share of the assets of the estate of Adelaide, namely the net proceeds from the sale of a house in Florida, in the amount of $214,158.18.

7

nondischargeable, pursuant to Section 523(a)(2), (a)(4) and/or (a)(6) of the U.S. Bankruptcy Code.[3]

———————————

[3]Section 523(a)(2), (a)(4) and (a) (6) provides, as follows:

## Section 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

&ast;    &ast;    &ast;    &ast;

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing–

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive[.]

&ast;    &ast;    &ast;    &ast;

*CONCLUSIONS OF LAW*

## SUBJECT MATTER JURISDICTION AND VENUE

1.  This complaint to determine the nondischargeability of a debt is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(I), over which the bankruptcy court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1334.  Venue is appropriate pursuant to 28 U.S.C. § 1409.

## BINDING EFFECT OF THE FLORIDA JUDGMENT

2.  The judgment of the Florida state court is binding on the following issues: (1) the 1986 Agreement and reciprocal wills of Mr. and Mrs. McIntire were valid and enforceable; (2) the 2003 will of Mrs. McIntire was invalid as violative of the 1985 Agreement; (3) the amount that the defendants are liable to the plaintiffs, namely, $98,488.24; and (4) that any of the estate assets in the hands of the defendants were held in constructive trust for the benefit of the plaintiffs.

---

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

\*                    \*                    \*                    \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(2), (a)(4) and (a)(6).

9

3.  While the Florida judgment does not specify the grounds upon which the defendants were held liable to the plaintiffs, whether for breach of contract, violation of fiduciary duties or other causes of action, it is noted that the suit alleged the misappropriation of estate funds by the defendants.

## FIDUCIARY CAPACITY

4.  The question of whether a debtor was acting in a fiduciary capacity for purposes of determining nondischargeability of debt in bankruptcy is a question of Federal law. *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 155-6 (Bankr. D. Md. 1999).  In the same opinion, this Court stated in *dicta* that, "The types of fiduciary capacity intended by Congress to render a debt nondischargeable are persons in positions of ultimate trust, such as public officers, executors, administrators, guardians, trustees of express trusts, attorneys and corporate directors." *Id.,* at 169-70. (Citations omitted).

5.  There is ample authority for the proposition that an executor, administrator, or representative of an estate is acting in a fiduciary capacity for purposes of determining a debt to be nondischargeable in bankruptcy. *See Bennett v. Curboy (In re Bennett)*, 2002 WL 368521 (D. Mass. 2002); *United States v. Tomlin (In re Tomlin)*, 266 B.R. 350 (N.D. Tex. 2001); *Estate of Nelson v. Nelson (In re Nelson)*, 255 B.R. 314 (Bankr. D. N.D. 2000); *Western Surety Co. v. Daly (In re Daly)*, 247

10

B.R. 369 (Bankr. S.D. N.Y. 2000); *Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651 (Bankr. N.D. Ill. 1998); *Caldwell v. Hanes (In re Hanes)*, 214 B.R. 786 (Bankr. E.D. Va. 1997); *Dutton v. Kondora (In re Kondora)*, 194 B.R. 202 (Bankr. N.D. Iowa 1996); *Hash v. Reed (In re Reed)*, 155 B.R. 169 (Bankr. S.D. Ohio 1993); *Fletcher v. Valdes (In re Valdes)*, 98 B.R. 78 (Bankr. M.D. Fla. 1989); *Kleppinger v. Kleppinger (In re Kleppinger)*, 27 B.R. 530 (Bankr. M.D. Pa. 1982); and *Aetna Ins. Co. v. Byrd (In re Byrd)*, 15 B.R. 154 (Bankr. E.D. Va. 1981).

6.  In order to prevail under Section 523(a)(4), "a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation." *Kubota Tractor Co. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008), quoting *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997).

7.  For purposes of Section 523(a)(4), the fiduciary relationship must have existed prior to the alleged wrongdoing, *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001), and  must be independent of the misconduct.  *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S. Ct. 151, 153-54, 79 L. Ed. 393, 397-98 (1934).

8.  The Fourth Circuit has held that defalcation by a fiduciary means "the failure to meet an obligation" or "non-fraudulent default." *Uwimana v. Rep. of Rwanda*, 274

11

F.3d 806, 811 (4th Cir. 2001). There the court found that the debt need not rise from an embezzlement or misappropriation in order to be nondischargeable. *Id.*[4]

9. The undisputed facts lead to the conclusion that the defendants acted as fiduciaries in the Florida proceeding when they filed the 2003 will for probate; that they acted as fiduciaries under grant by the Florida court of the summary petition for administration of the decedent's estate of their mother; *by reason of the summary nature of the proceeding they initiated*, they were acting in the guise of executors or personal representatives when they committed fraud upon the court and the plaintiffs; and that the defendants violated their fiduciary duties to the plaintiffs by excluding the plaintiffs from sharing in the distribution of estate assets. For these reasons, the plaintiffs are entitled to a determination that the debt owed to them by the defendants is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## NONDISCHARGEABILITY ALSO PROVEN
## PURSUANT TO SECTION 523(a)(2) AND (a)(6)

10. Count I of the complaint alleged that the defendants knowingly signed a document in which they made false representations to the Florida court, by which they obtained money and property by fraud and false pretenses. The argument by the

---

[4]In *Uwimana*, the Fourth Circuit held that an ambassador was acting as a fiduciary on behalf of his country because the nation of Rwanda entrusted him with state secrets and financial assets and expected his loyalty in return. 274 F.3d at 811.

defendants is that they made no such misrepresentations because they believed the 2003 will to be valid.  In support of this proposition, they produced state law precedent from Maryland and Florida, although the Florida court decision went against them on this point.  With respect to Count III brought pursuant to Section 523(a)(6), the complaint alleged that the defendants' conversion of the plaintiffs' property to the defendants' use was intentional and willfully caused damage to the plaintiffs.  The defendants claimed that because they believed the 2003 will to be valid, there was no intentional injury caused to the plaintiffs.

11.  The undisputed facts disclose a pattern of misconduct by the defendants in which they resisted the acknowledgment of the legal validity of the decedents' mutual wills with the purpose of depriving the plaintiffs of their rightful share of the legacies. While obtaining a second opinion as to the validity of the wills might furnish a legitimate argument that the defendants had a right to probate their mother's later will, it did not provide them the justification to ignore outright the existence of the controversy regarding the earlier will and to conceal that dispute from the Florida court when they petitioned it for summary probate.  In so doing, they committed  a fraud upon the court and fraud as to the plaintiffs whose competing claims to the proceeds of the estate were known by the defendants to exist and whose rights to property the defendants thereby disregarded in violation of their fiduciary duties.

12.  After obtaining the second opinion, the defendants acted in bad faith when they proceeded to obtain summary probate of the 2003 will in Florida.

13.  The misconduct perpetrated by the defendants in obtaining the summary probate of their Adelaide's estate and disposing of estate assets amounted to a defalcation and not a mere breach of contract.

14.  The judgment of the Florida court determined the earlier will to be valid because it gave the will its due legal effect.

15.  As the trier of fact, this Court had the opportunity to observe the testimony of both defendants and hereby finds that as witnesses they lacked credibility, that their memories were selective and that their testimony was not worthy of belief, particularly when they could not remember the disposition of the proceeds of the assets of the decedent's estate.

WHEREFORE, the debt to the plaintiffs is determined to be nondischargeable pursuant to Section 523(a)(2), (a)(4) and (a)(6), in the full amount of the Florida judgment plus interest.[5]

***ORDER ACCORDINGLY.***

---

[5]Because judgment was previously entered by the Florida State court, this Court may not enter a second money judgment.  *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253 (4th Cir. 2001).

cc:     Steven Lee Tiedemann, Esquire
        JPB Enterprises, Inc.
        8820 Columbia 100 Parkway, Suite 400
        Columbia, Maryland  21045
        Counsel to the Plaintiffs

        Gary A. Greenblatt, Esquire
        Constance M. Hare, Esquire
        Mehlman, Greenblatt & Hare, LLC
        723 South Charles Street, Suite LL3
        Baltimore, Maryland  21230 85 L. Ed. 2d 64
        Counsel to the Defendants

        Ms. Jane Utz
        Mr. James F. McIntire
        3323 Murray Road, Lot 12
        Finksburg, Maryland  21048
        Plaintiffs

        Ms. Barbara A. Frock
        129 Houck Road
        Westminster, Maryland  21157
        Defendant

        Ms. Nancy Gene Smith
        4241 Backwoods Road
        Westminster, Maryland  21158
        Defendant

        Office of the United States Trustee
        U.S. Courthouse, Suite 2625
        101 W. Lombard Street
        Baltimore, Maryland 21201